PEOPLE ex rel. BROWN v. O'ROURKE et al.

(Supreme Court, Appellate Division, Second Department. June 14, 1898.)

1. TAXATION—ASSESSMENT—OBJECTIONS—EVIDENCE.

If a citizen objects to the assessment of his property for taxation, it is for him to see to it that proper proof is placed before the assessors to show that the assessment is erroneous.

2. SAME—REVIEW ON CERTIORARI.

Although on certiorari to review a tax assessment the presumption is that the action of the assessors was proper, their own return, setting forth all the knowledge or information on which they acted, may establish that it was erroneous.

Appeal from special term, Westchester county.

Certiorari by the people, on the relation of William Reynolds Brown, as executor and trustee under the will of William Smith Brown, deceased, against John O'Rourke and others, assessors of the town of White Plains, and Charles P. Paulding, town clerk. From a final order reducing an assessment against relator for personal property, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John M. Digney, for appellants.

Isaac N. Mills, for respondent.

WOODWARD, J. William Reynolds Brown is the executor and trustee of and under the last will and testament of his father, William Smith Brown, who died seised of a considerable property, determined by the appraisers at $242,255.50. In the year 1897 the board of assessors of the town of White Plains, knowing of this appraisal, which was made in 1893, and knowing something of the value of the personal property which came into the possession of Mr. Brown as executor and trustee of the estate of his father, caused an assessment to be made against him in his capacity of executor and trustee, for $150,000 for personal estate. The assessors gave due notice of the completion of the assessment roll, and appointed a review day. The relator, who had but recently returned from Europe, desiring to visit the Yellowstone Park, or, as it appears in the record, "the far West," secured the blanks containing the formal questions of the board of assessors, and made answer to them under oath, leaving the paper to be served upon the board on the review day by his agent, Mr. Tibbits. The agent duly appeared, presented the formal complaint, setting forth the grievances of this relator, and submitting his verified answers to the several questions asked. The assessors

accepted, and considered the affidavit of the relator, but, not being satisfied, they notified his agent, Mr. Tibbits, to appear before them, and upon his appearance examined him under oath. Nothing of importance was elicited from Mr. Tibbits. He was asked as to the whereabouts of the relator, and on his answer that Mr. Brown was on his way to Yellowstone Park he was asked if he had any other agent who knew of the affairs of the estate. Mr. Tibbits said that he could find out from his clerk, and he subsequently appeared before the board of assessors, and told them that he had heard from Mr. Brown, the relator, "that the facts in reference to the estate are as stated in his affidavits." The affidavits of Mr. Brown assert, among other things, "that the greatest part of said estate consists of real estate; that said estate owns no United States bonds, no state or municipal bonds, nor any bond or bonds and mortgages of any kind whatsoever excepting a bond and mortgage of $2,000, made by Cornelia D. Hopkins to said estate, the principal of which has been reduced by payments to the sum of $1,800; that all of the remainder of the personal property of said estate consists of stocks of corporations, which pay their own taxes, and which, consequently, are exempt from taxation in the hands of the holder thereof; and that the estate of William Smith Brown, aforesaid, has no personal property whatsoever which is liable to taxation excepting the aforesaid mortgage of $1,800, and that, therefore, the assessment for personal property upon the assessment roll of the town of White Plains of $150,000 is wholly erroneous, and should be reduced to $1,800, the actual sum upon which the estate of William Smith Brown is liable to personal assessment," and that "there are still outstanding obligations against said estate amounting to over $105,000." The learned court, in granting the order appealed from, rendered a written opinion, in which it is laid down as a rule of law that, "where the facts relied upon to exempt property from taxation are, from their nature, known only to the person claiming exemption, and there is no proof impairing materially the force of the testimony, the evidence on the part of the person aggrieved concludes the assessors, and they must assume the matter sworn to be true, and correct the roll accordingly." "The following authorities," says the court, "fully sustain the foregoing propositions, and they furnish the rule for the decision in this case;" and as this is practically the only question presented it is worth while to consider the authorities cited in connection with the provisions of the statutes as they are to-day, and we may determine the extent to which the order of the court is justified. It is necessary to an understanding of this question that section 36 of chapter 908 of the Laws of 1896, known as the "Tax Law," shall be set out in full, as follows:

"Sec. 36. Hearing of Complaints.—The assessors shall meet at the time and place specified in such notice, and hear and determine all complaints in relation to such assessments brought before them, and for that purpose they may adjourn from time to time. Such complainants shall file with the assessors a statement, under oath, specifying the respect in which the assessment complained of is incorrect, which verification must be made by the person assessed or whose property is assessed, or by some person authorized to make such statement, and who has knowledge of the facts stated therein. The

assessors may administer oaths, take testimony and hear proofs in regard to any such complaint and the assessment to which it relates. If not satisfied that such assessment is erroneous, they may require the person assessed, or his agent or representative, or any other person, to appear before them and be examined concerning such complaint, and to produce any papers relating to such assessment with respect to his property or his residence for the purpose of taxation. If any such person, or his agent or representative, shall wilfully neglect or refuse to attend and be so examined, or to answer any material question put to him, such person shall not be entitled to any reduction of his assessments. Minutes of the examination of every person examined by the assessors upon the hearing of any such complaint shall be taken and filed in the office of the town or city clerk. The assessors shall, after said examination, fix the value of the property of the complainant and for that purpose may increase or diminish the assessment thereof."

The primary purpose of this law is to enable the state, and its various subdivisions, to collect sufficient revenues to enable it to meet the public expenditures, and it should not be construed to defeat this object, nor to enable individuals, corporations, or trustees to escape a just portion of taxation. The law makes it the duty of boards of assessors to "annually, between May first and July first, ascertain by diligent inquiry all the property and names of all the persons taxable therein" (Laws 1896, c. 908, § 20), and when this duty is performed the presumption must be that the assessment made pursuant to this information is correct. The law provides for a hearing, but the burden of proving the assessment erroneous is upon the party claiming to be aggrieved. It is for him to overcome the presumption which the acts of the board of assessors have raised in making the assessment after diligent inquiry; and a mere statement under oath that the estate has no personal property subject to taxation, or that "all the remainder of the personal property of said estate consists of stocks of corporations, which pay their own taxes, and which, consequently, are exempt from taxation in the hands of the holders thereof," does not conclude the assessors.

The relator, in making the statement that the remainder of the personal property of "said estate consists of stocks of corporations which pay their own taxes, and which, consequently, are exempt from taxation in the hands of the holders thereof," was simply swearing to his own conclusions of law; and, however correctly he may have stated the law, the board were not obliged to accept his statement as against their own conclusions upon facts which we must assume were known to them after that "diligent inquiry" which it is their duty to have made. It appears from the schedule of the assets of the estate of William Smith Brown that a portion of the securities found consisted of the bonds of a corporation, and there can be no doubt that such bonds, even of a foreign corporation, are taxable in the hands of the holders thereof, as was decided in the case of People v. Campbell, 138 N. Y. 543, 34 N. E. 370. This schedule the assessors had before them, and, in the absence of a detailed statement of the facts, they were justified in not accepting the general statement made by the relator. If the estate still owned these bonds, the statement of the relator that the estate had no personal property which was not exempt from taxation, with the exception of a certain mortgage,

would not be true; and, being false in this respect, it may have been false in others. There was also before the board of assessors proof that the relator had made sales of the real estate of his testator to the approximate amount of $80,000, the purchase price of which, if still held by the relator, either in cash or mortgage, was properly subject to assessment. If any part of this personal property was not exempt from taxation, the statement of the relator that the estate "has no personal property whatever which is liable to taxation excepting the aforesaid mortgage of $1,800" does not cure the defect, but is manifestly erroneous, however much the relator may have believed the statement, and did not operate to conclude the board of assessors. Obviously, then, the rule laid down by the court below, as applied to this case, is erroneous. The intent of the statute is that the assessors shall pass upon the facts, and not upon the conclusions of law reached by the relator; for it provides that the "verification must be made by the person assessed, or whose property is assessed, or by some person authorized to make such statement, and who has knowledge of the facts stated therein." It also provides that: "If any such person, or his agent or representative, shall wilfully neglect or refuse to attend and be so examined, or to answer any material question put to him, such person shall not be entitled to any reduction of his assessments." The relator, in the matter now before us, verified the answers in his statement, but, on the assessors notifying him that they were not satisfied with this evidence, he failed to appear before them, or to send any agent or representative who had knowledge of the facts stated. As the relator was at the time absent from the state, traveling in the West, it may be that his failure to appear should not be characterized as willful. Still the board of assessors were entitled to knowledge of each particular item of property owned by the relator, and the facts concerning it, so that the board might determine whether the property was taxable in this state, and, if taxable, estimate its value. The case of In re Corwin, 135 N. Y. 245, 32 N. E. 16, is authority for the proposition that the failure of the taxpayer to appear in person on grievance day would not deprive him of redress against an excessive assessment in case he appeared by attorney with proper proofs to show that his assessment was erroneous. The relator in this case appeared by an agent who was wholly ignorant of the facts relating to the subject-matter, and no proofs were produced to support the relator's affidavit. If the citizen objects to the assessment of his property for taxation, he must see to it that proper proof is given to show that the assessment is erroneous. It is said in the Corwin Case:

"If he is seeking to escape taxation because he does not possess taxable property of the value fixed by them, or because of nonresidence, or for some other reason which is peculiarly within his personal knowledge, there might be great propriety in requiring him to appear in his own person, in order that the assessors might probe his conscience by an examination under oath as to the extent of his possessions, or as to any other material fact of which he alone may be able to give the most reliable information. They cannot be compelled to act upon hearsay testimony, but have the right to demand the best evidence

obtainable. But even in such cases, if a personal appearance is impracticable on account of unavoidable absence, or sickness, or other cause, the taxpayer cannot be denied the opportunity to present his grievance by attorney, with the proofs to support it."

He must, however, produce the proofs to support his claim, either in the person of an agent who is familiar with the facts, or by such other evidence as will clearly show "the extent of his possessions." If he will not do this, the misfortune is his. But, while the presumption is that the action of the assessors has been proper, still in the present case they have returned to the writ all the knowledge or information upon which they acted in fixing the assessable value of the relator's property, and on that return the assessment is excessive. The inventory of the estate of the relator's testator shows that it was invested in the stock of corporations, with the exception of some $8,000. Shares of the stock of corporations, themselves subject to taxation, are not liable to taxation in the hands of the shareholders. This is the rule whether the corporations are domestic or foreign. People v. Commissioners of Taxes, 4 Hun, 595, 62 N. Y. 630; Id., 5 Hun, 200, 64 N. Y. 541. It does not appear which of the corporations in whose stock the estate of the testator was invested are domestic and which foreign, nor which are themselves taxable on their property. In this state, so far as now occurs to me, all stock corporations, with the exception of banks, pay taxes on their own property. It would thus appear that, charging the relator with the amount of the taxable property scheduled in the inventory of the estate, and also with all the proceeds of the real estate sold by him, the amount is much less than that which has been assessed against him by the respondents. We think it is not practicable to make any proper determination of the assessable value of this real estate on the facts appearing in this record, and that the proper course is to take proof as to the extent, details, and character of the estate.

The order appealed from should be reversed, with $10 costs and disbursements, and proceedings remitted to the special term, with direction to take proof as to the estate in the hands of the relator, or to appoint a referee for that purpose. All concur.