(58 App. Div. 468.)

PEOPLE ex rel. H. B. CLAFLIN CO. v. FEITNER et al., Commissioners.

(Supreme Court, Appellate Division, First Department.  March 22, 1901.)

1. TAXATION—VALUATION—ASSESSMENT—REDUCTION—CORPORATION—EXAMINA-
TION—QUESTIONS—PROPERTY.

Where application was made to the commissioners of taxes and assess-
ment, by a foreign corporation having its main office nominally in another
state, but really in New York, and doing a large business in various
states, to reduce the assessed valuation of property, it was proper for
the commissioners to inquire into the amount of business carried on, and
the value of the property held, in the other states, as tending to enable
them to determine how much property was assessable in New York.

2. SAME—QUESTIONS—REFUSAL TO ANSWER—EXCUSE—SUFFICIENCY.

The mere fact that the questions asked by the commissioners were in-
quisitorial was not ground for a refusal to answer, since the examination
was of necessity inquisitorial, and the materiality of the questions was
for determination by the commissioners, and not by the person seeking
a reduction of his assessment.

3. SAME—EVIDENCE—SUFFICIENCY.

The applicant for reduction of the assessed valuation of property from
$1,000,000 to $290,000 was a mercantile corporation, doing business in
other states and in foreign countries as well as in New York.  One-sixth
of its business was done in New York.  At the date of assessment its
gross assets were nearly $16,000,000, and its liabilities, exclusive of capi-
tal, nearly $7,000,000, of which about $6,500,000 were on open account.
On its own statement, it had on hand in the state, when assessed, assets
of $4,240,000, of which $2,400,000 was merchandise and $1,750,000 was bills
and accounts receivable.  Against these assets in the state the corpora-
tion claimed that it owed bills and accounts payable of nearly $4,000,000,
out of the total of $6,500,000 of such debts owed by them.  The corpora-
tion refused to answer as to the amount of its assets or debts outside of
the state, and no evidence was given corroborating their figures.  *Held*,
that the commissioners were justified in refusing to reduce the assess-
ment.

Appeal from special term, New York county.

Certiorari by the people, on relation of the H. B. Claflin Company,
to review the determination of Thomas L. H. Feitner and others,
commissioners of taxes and assessments of the city of New York.
From a judgment of the special term (66 N. Y. Supp. 154) dismiss-
ing the writ, relator appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON,
O'BRIEN, and INGRAHAM, JJ.

Gustavus T. Kirby, for appellant.

George S. Coleman, for respondents.

RUMSEY, J.  The relator is a foreign corporation, organized un-
der the laws of the state of New Jersey, doing no business in that
state, so far as appears, but having actually, although not nominally,
its principal place of business in the state of New York, where a
large portion of its transactions are had.  On the second Monday
of January, 1899, an assessment was made against the property of
the corporation to the amount of $9,000,000.  Upon complaint and
an application, the assessment was reduced to $1,000,000, and to
correct the assessment thus reduced this writ was sued out; the
relator insisting that it was only assessable upon the amount of

$290,000, that being all the property it had invested in business in the state of New York. When the relator's president was examined, his attention was called to testimony he had given upon a previous application to the commissioners to correct the assessment of the year before, and he was asked whether certain statements then made about the business of the corporation in New Jersey were correct, to which he replied refusing to answer any such question, and saying that he was willing to answer any question in regard to transactions of the company in this state, but that as to what was done in New Jersey he would not answer. The commissioners insist that that was a willful refusal to answer questions, and that because of it they were justified in refusing to reduce the assessment under the provisions of section 36 of the tax law, to the effect that if any person shall willfully neglect to answer any question put to him by the commissioners such person shall not be entitled to any reduction of his assessment. The relator claims that this section of the tax law is not applicable to examinations taken in the city of New York, because examinations there are controlled by section 895 of the charter of the Greater New York, and that section contains no provision imposing a penalty for a willful refusal to answer questions. In the view we have taken of this case, we do not deem it necessary to answer this question. It is proper to say, however, that whether such a refusal would be an absolute bar to the reduction of an assessment as is provided by the statute or not, it is yet a fact which the commissioners may take into consideration. In cases like this, where the corporation is a foreign one, and where it is quite evident, as it is here, that the organization of the company in another state is purely nominal, and that very little business is carried on in that state, it is perfectly proper, in our judgment, for the commissioners to inquire into the amount of the business carried on and the property held there. The question is not what, in the judgment of the officers of the corporation, is a proper amount for which they should be assessed, but what amount is actually invested in business in the state of New York. When it appeared that the company did business in various states, it was proper, to enable the commissioners to form a judgment as to how much property is actually invested in business in the state of New York, that they should inquire as to the amount of property in the other states. In this particular case the assessors knew from a statement of the relator the amount of its capital, its property, and its liabilities. It appeared that these were scattered in various places, and it was perfectly proper for the commissioners to insist upon a correct answer as to the locality where the property was, the value of it in each place, and the amount of the liabilities which arose out of the transactions in each locality where the business was carried on.

It is complained that the examination is inquisitorial. That necessarily is the case. This examination which the commissioners are authorized to make must, of necessity, be inquisitorial, and, while the commissioners should go no further than is reasonable in getting at the facts, yet the mere fact that in any given case the examination is inquisitorial does not afford a good reason why the questions asked

should not be answered. Whether the questions are material is for the commissioners to determine, and not the person who presents himself to obtain a reduction of his assessment.

Upon this whole case we are of the opinion that it has not been made to appear that the amount of the assessment against the relator was excessive. These taxes were levied in January, 1899. On the 1st day of January of that year the relator had something over $15,983,000 of assets. Its liabilities, exclusive of capital, were $6,-983,000, leaving a balance of assets of $9,000,000. It appeared that, of these liabilities, open accounts amounted to $6,347,000. It appeared that one-sixth of its business was transacted in the state of New York, and that it did none in the state of New Jersey, but its other business was done in Paris and Manchester, where there were important branches. Where else the business was done did not appear. It had, according to its own statement, in January, 1899, assets in the state of New York amounting to $4,240,000, of which sum $1,750,000 consisted of notes and accounts receivable in that state, and $2,400,000 was goods, wares, and merchandise. In addition to that, it had about $90,000 of personal property in that state outside of the amount invested in land. It was said that, of the bills and accounts payable, there were incurred for items in the sales above enumerated about $3,950,000. That is to say, the statement of the company tended to show that whereas it had in the state of New York $4,240,000 of assets, of which $2,400,000 were goods, wares, and merchandise, and it had altogether debts of about $6,500,000, yet nearly $4,000,000 of that was due on account of goods, amounting to $2,400,000, and the $1,750,000 of notes and accounts payable in the state of New York. The commissioners might well question the accuracy of this statement, which upon its face looks a little doubtful. That was undoubtedly understood by the relator's president, who explained it by saying that the result of their manner of doing business was that on the second Monday of January fully $6,000,000 was owing to New York firms, and fully $4,000,000 could be traced to purchases of merchandise in New York and accounts and notes owed to New York firms. Nothing with respect to the amount of assets outside of the state of New York or the amount of the outside indebtedness was vouchsafed by the company. Nor did the commissioners have any information which would enable them to corroborate this statement, and therefore the matter stood before the commissioners on the statement that although but one-sixth of the business of the corporation was done in the state of New York, and although there was but $4,240,000 of the $9,000,000 of assets in that state, yet against that $4,240,000 of assets there were to be charged $4,000,000 out of the total of $6,000,000 of liabilities. The commissioners, I think, were quite right in declining to accept that statement in its entirety, in the absence of further explanations; and here comes the importance of that statement of the witness upon his examination that he would answer everything about the New York business of the company, but as to what was done in New Jersey he would not answer. When that statement was made, the commissioners were justified in inferring from it that, while the witness

was willing to give such information as he saw fit with respect to the property in the state of New York, he proposed to limit the examination to that property, and not give to the commissioners such information with regard to other property as would enable them to pass upon the correctness of his statement as to the New York property.

It is quite true that ordinarily, when uncontradicted testimony is given by a witness before a tribunal, unless there is some reason for discounting it, the person who is to decide upon it should accept it; but in coming to a conclusion upon it the officer to whom it is presented may take into consideration the extent of it, the information given to him, the fact that certain information was withheld so that he did not have the whole case before him, and he may also consider that natural tendency of human nature to make the best showing for his own side, and especially the remarkable force of that tendency when one applies to have his taxes reduced. When the application for this reduction was made, it was the duty of the applicant to make clear the fact that he was entitled to what he asked.

Upon an examination of this case, we are unable to say that the evidence does make that clear, and for that reason we think that the conclusion of the commissioners was correct, and that the determination made below must be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur. PATTERSON and INGRAHAM, JJ., concur in result.