In the Matter of RICHARD A. GROSSMAN et al., as Trustees for PATRICIA L. GROSSMAN, Respondents, v. BOARD OF TRUSTEES OF THE VILLAGE OF GENESEO, Appellants. (And 3 Other Proceedings.)

Fourth Department, April 11, 1974.

*Nixon, Hargrave, Devans & Doyle (G. Robert Witmer, Jr., of counsel), for appellants.*

*Schwartz & Weiss, P. C. (Anthony Curreri* and *Eugene J. Schwartz* of counsel), for respondents.

SIMONS, J.   This is an appeal from a judgment of Supreme Court in four consolidated proceedings under article 7 of the Real Property Tax Law to review town and village tax assessments on a shopping center.

The appellants raise two points: (1) that Special Term improperly restricted the assessment on the property to actual cost less depreciation and (2) that the petition against the village for the 1968 assessment should have been dismissed because of the taxpayer's willful refusal to answer material questions asked by the Board of Review (Real Property Tax Law, § 512, subd. 2).

The property is a shopping center owned by petitioners.   It was developed by a corporation in which they own all the stock and built by a contracting company similarly owned by them. The appellants assessed the property based upon a fair market value of $1,312,600.[1]  At the trial petitioners introduced their ledger sheets to show the actual cost of the improvement[2] and they produced a real estate expert who testified as to the fair market value based upon the three accepted appraisal methods: capitalization of income, market data, and replacement cost less depreciation.   The appellants produced similar expert testimony and the Referee found a full value of $1,150,000 based upon the replacement cost less depreciation, an amount within the range of evidence established by the two experts.   Special Term reduced this to the " actual " costs as shown by the ledger sheets after adding the stipulated land value and estimated profit and interest.   It found a full value of $983,247.

The general rule is that real property may not be assessed at an amount which exceeds the cost less depreciation.   The reason for the rule was set forth in *People ex rel. Parklin Operating Corp.* v. *Miller* (287 N. Y. 126, 129–130):

" Evidence of income derived, or which can be derived, from real property may at times constitute more persuasive evidence of the price at which the income-producing property can be sold in ordinary circumstances than evidence of actual sales of more or less similar property under more or less similar conditions, for we know that in ordinary circumstances investors will pay for income-producing property a price measured in large part by the amount and certainty of the income which can be obtained from such property.   *On the other hand, we also know that an*

---

1. The town assessment was slightly lower in 1968.
2. The parties stipulated the value of the land and " land improvements ".

*investor will not pay more for an income-producing property than the amount for which he could acquire at less cost property which would with equal certainty produce an equal income, either by purchase in the open market or by purchasing unimproved property and erecting upon it a similar improvement.*

" For these reasons we have recently said in *People ex rel. Manhattan Square Beresford, Inc.* v. *Sexton* (284 N. Y. 145 [opinion by CONWAY, J.]): ' The value of the improvement arrived at by capitalization of potential or actual income may well be weighed and considered but if it be more than reconstruction cost less depreciation, at least in the absence of extraordinary circumstances not present here, the latter still remains the maximum value which may be assessed upon the property.' " (Emphasis added.) Petitioners claim that once actual cost is established, that figure is the maximum cost which may be used in applying this rule. Special Term apparently accepted this theory and refused to accept the Referee's finding of a replacement cost which exceeded the actual cost. The justification for such a severe rule is said to be found in a statement made by the Court of Appeals in *Matter of 860 Fifth Ave. Corp.* v. *Tax Comm.* (8 N Y 2d 29, 32): " Cost of new buildings or reproduction cost less depreciation establish maximum building value in assessment cases." Reliance upon that quotation ignores other language contained in the same paragraph of the decision explaining that actual construction cost is properly considered as a *factor* or *some evidence* of replacement cost. To the same effect, the Court of Appeals stated in *Matter of Seagram & Sons* v. *Tax Comm.* (14 N Y 2d 314, 317): " that for an office building like this, well suited to its site, the actual building construction cost of $36,000,000 is *some* evidence of value, at least as to the years soon after construction " (citations omitted; emphasis added).

The cost of reproduction less depreciation is established as the maximum fair market value for tax purposes because no buyer willingly pays a price for a building which exceeds the cost to him to duplicate it. Actual cost is of first importance in determining replacement cost but it is not conclusive. There is no reason to restrict a court to " actual " cost figures which may reflect a peculiar advantage or disadvantage derived from the time or circumstances of the construction and there is nothing inherently more reliable or precise in an " actual cost " which includes estimated profit and interest charges than on a well-documented expert's opinion of replacement cost. In this case in which the owners, the developer, and the construction contractor are all the same people, there is no assurance that

the actual cost reflects replacement cost to a potential buyer because the transaction was not an arm's length transaction. If we were to implement the rule suggested, we would place the assessing unit in the position of either accepting the taxpayer's figures on an *ipse dixit* basis or trying to challenge them item by item, a lengthy and expensive process. It would be foreclosed from supplying opposing expert evidence of reproduction cost for the court's consideration.

The Referee properly considered all of the evidence in the record. He stated valid reasons for accepting and rejecting various items of evidence and since his value was based upon a proper interpretation of the law, we modify Special Term's judgment and accept the Referee's findings that the fair market value of the property for 1968 and 1969 was $1,150,000. The town assessment for 1968 and 1969 and the village assessment for 1969 should be adjusted accordingly.

The petition to reduce the 1968 village assessment should be dismissed. The taxpayers filed their grievance with the Village Board of Review on February 20, 1968. Petitioner Baker, a real estate developer, builder and member of the New York Bar appeared with counsel at a formal grievance hearing March 14, 1968. He refused to answer any question regarding leases or income and stated that he was there " for the sake of furnishing any information * * * *which I feel* is applicable * * * information as to the actual construction costs of the property and as to the amount of money that was paid for the property. I am not prepared to, or am I going to answer any questions about anything else " (emphasis added).

On the basis of that refusal, appellant village moved to dismiss the petition for 1968 pursuant to subdivision 2 of section 512 of the Real Property Tax Law, contending that Baker's refusal to answer questions relating to economic data, as well as others related to cost, placed him in violation of subdivision 2 of section 512 of the Real Property Tax Law and justified dismissal of the petition. The petitioners answered that they relied solely upon a cost less depreciation valuation, the maximum assessment permitted by law, and therefore information necessary for capitalization based upon leases and rents was not material.

Article 5 of the Real Property Tax Law provides a procedure for fixing and reviewing tax assessments. The assessment is fixed, the taxpayer is notified, and if the taxpayer is dissatisfied, adjustment by administrative action attempted. If the parties fail to adjust the assessment satisfactorily at this administra-

tive level, judicial review may follow under article 7. However, administrative review is a necessary precondition for maintenance of a judicial proceeding (Real Property Tax Law, § 706; *Matter of City of Albany* v. *Assessors of Town of Coeymans,* 253 App. Div. 436). To implement this administrative proceeding, the statute specifies that the Board of Review is authorized to hear complaints and take testimony. It may require the taxpayer to appear and be examined and produce his records for examination. If the taxpayer willfully refuses or neglects to appear or answer any material question put to him, he " shall not be entitled to any reduction of the assessment subject to the complaint " (Real Property Tax Law, § 512, subd. 2).

The assessors are charged with responsibility of investigating the necessary facts upon which to establish a proper assessment roll. Once the roll is completed, it is presumed to be accurate and free of error. If a taxpayer contends otherwise, then the burden is upon him to demonstrate that fact to the assessors. It is not sufficient for the taxpayer to assert merely the conclusions of illegality or error, he must indicate where error exists. To that end, the members of the board are entitled to view the whole matter, to ask questions and examine the records which are reasonably necessary to resolve the issue (*People ex rel. Brown* v. *O'Rourke,* 31 App. Div. 583, 588). It is for the board, not the taxpayer, to determine what information is material to the proceeding (*People ex rel. Claflin Co.* v. *Feitner,* 58 App. Div. 468, 470–471). While the proceeding may appear inquisitional to the taxpayer, the boundaries of the inquiry are broad and if the questions are reasonably necessary and material to determining issues of tax exposure or assessed value for the property, they are proper. Considering " that natural tendency of human nature to make the best showing for his own side, and especially the remarkable force of that tendency when one applies to have his taxes reduced " (*People ex rel. Claflin* v. *Feitner,* at p. 472), the board is not limited to the information which the taxpayer himself decides is material and he is answerable for his refusal, whether it is based upon advice of counsel as he claims here, or on a position that the information requested is not material to the cost approach of valuation relied upon.

Viewed from this perspective, it becomes manifest that even though replacement cost less depreciation may, in the final event, be the maximum measure of value, that cost and the credibility of the witnesses eventually testifying on the subject may be weighed in conjunction with other methods of appraisal and

facts concerning the operation and evaluation of the property (*People ex rel. Parklin Operating Corp.* v. *Miller*, 287 N. Y. 126, 130, *supra*; *People ex rel. Manhattan Sq. Beresford* v. *Sexton*, 284 N. Y. 145, 149). Both parties to this appeal recognize this principle, as did their appraisers, for both sides introduced evidence at the trial which considered valuation of the building upon the alternative market data and economic theories. Indeed, petitioner's appraiser gave his opinion of value in both his report and in court based upon economic data. When advised of the legal rule limiting the value to reproduction cost, he reduced the value accordingly. If the evidence was competent for the court, certainly the underlying facts upon which it was based were material evidence for the Board of Review. Any other view of what is material and necessary information at the grievance hearing is far too restrictive to permit any intelligent adjustment by the assessors.

A pertinent illustration of the difficulty which may result from accepting the narrow view of material evidence before the board as suggested by petitioners is present in the facts of their own case. Not only did petitioners' expert originally rely on the economic approach, he relied on various economic factors in preparing his cost approach, and in doing so he used information denied to appellants at the grievance hearing. At the trial the petitioners' real estate expert submitted a written appraisal and testified orally to a construction cost and he then depreciated these new building improvements the extraordinary amount of 30%.[3] This depreciation was based on 5% physical depreciation and 25% economic obsolescence. The appraiser's opinion on the 25% obsolescence was based partly on consideration of (per his written report): "the continuous vacancy of a 2,820 sq. ft. satellite store for the 2± years since construction of the plaza. Another satellite shop with 1,200 sq. ft. was occupied in December, 1968 as a liquor store. This type of occupancy generally results in a particularly prosperous operation, especially when located in a college town. However, this business venture soon became bankrupt and the store was again vacant 8± months after its first occupancy." As the appraiser testified at trial, the 25% factor reflected "a vacancy of one store for a considerable period of time, one liquor store failed in business", and there were no rental overages paid on the percentage leases. This economic data was used in a significant manner by the taxpayers and denied to the board at the grievance hearing. It demonstrates the necessity of broad disclosure at the admin-

---

3. The land improvements were depreciated 35%.

istrative level and the materiality of economic data to the board's inquiry even though the taxpayer eventually intends to rely upon a cost theory of valuation.

Finally, Baker also willfully refused to answer questions which related clearly to the cost of the improvements. When questioned about mortgages, insurance, building dimensions and improvements, he referred the assessors to the public records. In answering questions about costs, he supplied them with contract costs rather than actual costs; another question about cost items provoked his suggestion that the taxpayers send an accountant to examine his books at his expense, and when asked about the depreciation rate used by the corporation, he offered to supply the information if the village would agree to accept his figures.

Mr. Baker protested that he had received notice of the meeting only a day or two earlier and had not had time to prepare the requested information, but the board had met with him and reviewed the protest with him or his attorneys at least twice in February and on one or more other occasions in his attorneys' office on dates before the formal meeting. He could not have been entirely unprepared. At any rate, it does not appear that he requested an adjournment or a further opportunity to secure the requested information.

Petitioners contend that there was no prejudice to the village because the information was available through examination before trial, and the parties had stipulated the income at trial. This contention fails to comprehend the statute's purpose. The statute anticipates that assessments shall be fixed, and fixed accurately, by the municipal officials having some familiarity with real estate values of the area, not by Judges. Administrative review is a fundamental and necessary part of the process not to be avoided or frustrated at the will of the taxpayer. The assessing unit has an interest in the accuracy and stability of its rolls and, when challenged, it has the right to attempt to adjust them for error promptly without being forced to the expense and uncertainty of litigation. The adjustment should be made by a board with reasonable knowledge of the facts upon which the taxpayer claims his right to reduction, not by a board forced to settle upon a negotiated assessment arrived at without sufficient information or be faced with possible litigation. Any remedy available after litigation is commenced cannot act as a substitute for this statutory procedure preceding litigation, nor can it avoid the prejudice resulting from the taxpayer's failure to co-operate. Petitioners' contention that the only penalty for violating subdivision 2 of section 512 of the Real

Property Tax Law is loss of administrative relief negates the clear language and intent of the section.

We find that petitioners willfully refused to supply material information to the Board of Review and that pursuant to the statute, they have forfeited their right to a reduction of the village assessment for 1968 (Real Property Tax Law, § 512, subd. 2; *People ex rel. Irving Sav. Bank* v. *Howes,* 266 App. Div. 1024).

The judgment of Special Term should be modified by dismissing the petition involving the village assessment for 1968 and by adopting the Referee's findings as to the other assessments.

MARSH, P. J., MOULE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with opinion by SIMONS, J., and as modified affirmed, without costs.