547 P.2d 2 (1976)
In the Matter of the Tax Appeal of PUNA SUGAR COMPANY, LIMITED, Appellant.
No. 5602.
Supreme Court of Hawaii.
March 8, 1976.
*3 C. Michael Hare and Richard L. Griffith, Honolulu (Cades Schutte Fleming & Wright of counsel) Honolulu, for appellant.
Alana W. Lau, Deputy Atty. Gen., Ronald Amemiya, Atty. Gen., State of Hawaii, Honolulu, for appellee.
Before RICHARDSON, C.J., and KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.
RICHARDSON, Chief Judge.
The taxpayer, Puna Sugar Company, Limited (hereinafter, Puna Sugar), is a Hawaii corporation engaged in the business of producing and refining sugar in the Puna District on the Island of Hawaii. In 1969 Puna Sugar purchased boiler and diffuser equipment from unlicensed mainland sellers and imported the purchased equipment to the State for use in its Puna Sugar mill. The purchase price of the equipment was $990,771.06 and the freight charges were $96,114.54, thus resulting in a total cost to Puna Sugar of $1,086,885.60.
HRS § 238-2(3) imposes a tax on equipment imported for use in the State (hereinafter, use tax), at a rate of 4% of the value of the property, accruing when the property is aquired by the importer and becomes subject to the taxing jurisdiction of the State[1]. "Value" is defined in HRS § 238-1 to mean the "fair and reasonable cash value at the time of accrual of the tax."
The Director of Taxation has determined the use tax base to be the landed value (value at time of entry) of the imported equipment and therefore to include freight charges incurred in importation and has assessed Puna Sugar accordingly. Puna Sugar denies that freight charges are includable in the use tax base and paid the use tax attributable thereto under protest. Pursuant to HRS § 40-35, Puna Sugar instituted suit in the Tax Appeal Court for refund of the applicable portion of the use tax. The Tax Appeal Court entered a judgment for the defendant, Director of Taxation, from which plaintiff, Puna Sugar, appeals.
Two questions are raised in this appeal: (1) whether the Tax Appeal Court erred in holding that the freight charges incurred *4 by the appellant in importing equipment for use were properly includable in determining "value," the use tax base, and (2) whether the Tax Appeal Court erred in holding that the inclusion of freight charges in the use tax base does not impose a discriminatory burden upon interstate commerce.
It is well settled that in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was "clearly erroneous." In re Taxes Ewa and Waialua, 47 Haw. 41, 51, 384 P.2d 287 (1963).

I. FREIGHT CHARGES INCURRED BY THE APPELLANT IN IMPORTING EQUIPMENT FOR USE ARE PROPERLY INCLUDABLE IN DETERMINING VALUE, THE USE TAX BASE.
HRS § 238-2 provides that "value" is the use tax base for equipment imported to the State for use. Article 6(a) of the Rules and Regulations of the Director of Taxation Relating to the Use Tax Law under Chapter 238, HRS, provides that:
"`Value' means fair and reasonable cash value at the time of accrual of the tax which should include freight, insurance, handling charges less allowances for cash, trade, and quantity discounts." (Emphasis added).
Employing this formula, the Director has computed the "value" of the imported equipment by adding the purchase price and the costs of importation. Puna Sugar argues that while such computation reflects an accurate measurement of cost, it does not accurately measure "market value," which it argues is synonymous with "fair and reasonable cash value." Puna Sugar contends that a market valuation should be resorted to but does not suggest an alternative method by which market value could be ascertained.
Using hypothetical illustrations, Puna Sugar argues that employment of the Director's formula leads to valuations in conflict with market valuation. However, it fails to demonstrate any conflict in the instant case and at no time alleges what the market value should in fact be. Aside from merely charging that the method employed is incorrect, it is incumbent upon the taxpayer to show that the results incorporated in the assessment do not represent the fair and reasonable value. In re Taxes Ewa and Waialua, supra at 63, 384 P.2d 287; Bailey v. Megan, 102 F.2d 651 (8th Cir.1939); Knappton Towboat Co. v. Chambers, 202 Or. 618, 276 P.2d 425 (1954); In re Weyerhaeuser Land Co., 85 Or. 434, 165 P. 1164 (1917).
Market value, as the appellants state, is no more than the value in money of any property for which that property would sell on the open market by a willing seller to a willing buyer. For highly specialized items for which there is a very limited market such as the boiler and diffuser equipment in the instant case, we think that the best and perhaps only indicator of market value is the expense including freight charges that a businessman or corporation is willing to bear in order to enjoy the use of such equipment in this State. The formula employed by the Director reflects the expenses willingly borne by Puna Sugar.
The Director's formula, which includes calculation of freight charges, does not irrebutably determine value. Items imported for use may have depreciated or been damaged prior to landing in this State, thus reducing their value. The importing businessman may have been less than prudent in negotiating a purchase price or securing the most economical delivery terms, thus incurring expenses greater than the value of the property. However, in the instant case the taxpayer did not come forward with any evidence indicating that the value of the equipment was an amount different from that determined by the Director. In the absence of any countervailing evidence, we think that the calculation of purchase price plus freight charges reflects the fair and reasonable value of the imported equipment.

*5 II. THE UTILIZATION OF LANDED VALUE INCLUSIVE OF FREIGHT CHARGES DOES NOT IMPOSE A DISCRIMINATORY BURDEN UPON INTERSTATE COMMERCE.
It is well settled that a use tax, nondiscriminatory in its operation, does not impose a direct burden upon interstate commerce and is constitutionally permissible. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). Rather than burden interstate commerce, the use tax is "designed to cause interstate commerce to bear its fair share of the cost of local government in a manner that is not discriminatory of such commerce but `actually puts that commerce upon a plane of equality with local trade in local taxation.' (Nippert v. Richmond, 327 U.S. 416, 434, 66 S.Ct. 586, 90 L.Ed. 760 (1946))," Stewarts' Pharmacies, Ltd. v. Tax Com'r Fase, 43 Haw. 131, 137 (1959).
Equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out of state. Halliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963). Puna Sugar contends that the Director accords in-state and out-of-state purchasers dissimilar treatment resulting in an unconstitutional discrimination against interstate commerce. It complains that transportation charges are not included in the sales tax base when a sales tax is imposed on in-state sales, while transportation charges are included in the use tax base when a use tax is imposed on the use in this State of property purchased out of state.
Chapter 237, HRS, indicates that the sales tax base is gross proceeds of the sale. Hence, had Puna Sugar or any in-state user purchased the boiler and diffuser equipment from a Hawaii retailer, a sales tax would have been paid upon the purchase price. However, we agree with the court in Colonial Pipeline Co. v. Clayton, 275 N.C. 215, 224, 166 S.E.2d 671, 677 (1969), that "[t]he retail price upon which the sales tax is paid by the purchaser necessarily takes into account the transportation charges that have been paid on the goods to bring them to the retail outlet in [the state] where the sale takes place." (Citations omitted.) We are of the view that the net effect of including transportation charges in the use tax base is to equalize the burden of the tax on the property sold locally and the property purchased out of state. Such inclusion therefore does not impose a burden on interstate commerce.
Affirmed.
NOTES
[1] HRS § 238-2(3) provides, in relevant part, that:

"There is hereby levied an excise tax on the use in this State of tangible personal property which is imported, or purchased from an unlicensed seller, for use in this State. The tax imposed by this chapter shall accrue when the property is acquired by the importer or purchaser and becomes subject to the taxing jurisdiction of the State. The rates of the tax hereby imposed and the exemptions thereof are as follows:
* * * * *
"(3) In all other cases, four per cent of the value of the property."