In the Matter of the Tax Appeals of AMFAC, INC. and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

NO. 6701

(TAX APPEALS NOS. 1720, 1721 AND 1722)

NOVEMBER 29, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR,
ASSIGNED TEMPORARILY

OPINION OF THE COURT BY RICHARDSON, C.J.

The questions presented in this interlocutory appeal are 1) whether the state director of taxation has discretion under Chapter 246, HRS (1976) to utilize methods of valuation in addition to the replacement cost approach in determining the fair market value of buildings for real property tax purposes, and 2) if so, whether his failure to consider the utilization of alternative methods necessarily constitutes a basis for adjustment of an assessment. Appellant AMFAC, INC. (taxpayer) argues that these questions must be an-

swered in the affirmative in view of the paramount objective of our real property tax law to tax property according to its fair market value. Conversely, the director argues, and the tax appeal court agreed, that exclusive application of the replacement cost method is mandated by HRS § 246-10(g) (1976). We interpret the relevant statutory language to permit the utilization of any method of valuation which would contribute to the determination of the fair market value of structures, but also find that the director's failure to consider all available methods does not necessarily provide the basis for an adjustment.

I.

In this action taxpayer AMFAC contests real property tax assessments made against the structures known as the Waikiki Beachcomber Hotel and Holiday Isle Hotel for the tax year 1975-1976. These assessments were affirmed in actions before the Board of Review of the first taxation district, and the cases were subsequently consolidated in the tax appeal court where a separate trial was had on the legal issues relating to the method of valuation employed by the director.[1] The court rendered a decision affirming

---

[1] Trial, by stipulation, was limited to the following issues with all remaining issues to be tried separately:

(a) Is the Director of Taxation, State of Hawaii, under Chapter 246, Hawaii Revised Statutes, as amended, required or authorized to use other methods of valuation in addition to the replacement cost approach in the determination of the fair market value of improvements for real property tax purposes?

(b) Is the Director of Taxation, State of Hawaii, under Chapter 246, Hawaii Revised Statutes, as amended, required or authorized, in the application of the replacement cost approach in determining the fair market value of improvements for real property tax purposes, to consider the income produced by such improvement?

(c) Is the use by the Director of Taxation, State of Hawaii, without consideration of the merits and applicability of other valuation methods, of the replacement cost approach as the exclusive method of determining the fair market value of improvements for real property tax purposes an illegal method or error in the application of methods resulting in lack of uniformity or inequality under Section 232-3(2), Hawaii Revised Statutes, as amended?

(d) Is the refusal by the Director of Taxation, State of Hawaii, to consider income produced by improvements in applying the replacement cost approach for determining the fair market value of such improvements for real property tax purposes an illegal method or error in application of methods resulting in lack of

the director's exclusive consideration and use of the replacement cost method of valuation in determining the fair market value of the buildings. It supported this finding with the conclusion that the director was statutorily bound to the exclusive use of this method. Taxpayer now alleges that the tax appeal court erred in so concluding.

## II.

### A.

Under HRS ch. 246 (1976), the statute applicable to this action,[2] responsibility for the valuation and assessment of property for the purposes of real property taxation rested with the state. director of taxation. Section 246-10, HRS (1976) required the director to determine annually "the *fair market value* of all taxable real property" (emphasis added) for the purposes of levying such taxes with buildings to be valued separately from all other real property.

As to the methods to be utilized in making these valuations, the statute's initial mandate was simply that:

All property shall be valued by appropriate systematic methods so selected and applied as to obtain, as far as possible, uniform and equalized assessments throughout the State.

HRS § 246-10(b). It subsequently provided that in valuing land, other than land classified and used for agriculture, consideration was to be given to an extensive number of enumerated factors, including "selling prices and income." HRS § 246-10(f)(1)[3] but with

---

uniformity or inequality under Section 232-3(2), Hawaii Revised Statutes, as amended?

(3)[sic] Is evidence as to the income produced by the improvements involved herein admissible upon trial of the fair market value for real property tax purposes of such improvements?

[2] Effective July 1, 1981 the powers, functions and duties exercised by the director with respect to assessment and valuation were turned over to the respective counties. Chapter 246A, HRS (1981 Supp.).

[3] The factors enumerated appear to have encompassed virtually every conceivable variable:

\* \* \* \* \*

(f) (1) In determining the value of land, other than land classified and used for agriculture, consideration shall be given to selling prices and income (including, where available, such data relating to the property being assessed and similar

respect to valuing buildings, it provided merely that:

> (g) Buildings shall be valued each year upon the basis of the cost of replacement less depreciation, if any. Age, condition and utility or obsolescence shall be considered.

HRS § 246-10(g).

B.

The director contends that the proper interpretation of subsection 246-10(g) is to mandate the exclusive application of the replacement cost method of valuing buildings so that he is entirely without discretion to consider or utilize alternative modes of valuation. We do not agree.

The "ultimate purpose of valuation, whether in eminent domain or tax . . . proceedings is to arrive at a fair and realistic value of the property involved." *Great Atlantic and Pacific Tea Co. v. Kiernan,* 42 N.Y.2d 236, 242, 397 N.Y.S.2d 718, 723, 366 N.E.2d 808 (1977). Our statutory scheme of real property taxation adopts this principle by identifying "fair market value" as the relevant measure of the value of property. And we have previously defined "market value" as "the value in money of any property for which that property would sell on the open market by a willing seller to a willing buyer." *In re Puna Sugar Co.,* 56 Haw. 621, 624, 547 P.2d 2, 4 (1976).

In determining fair market value, thus understood, the replacement cost method has been viewed by some to be the least favored means of valuation, *see, e.g., Great Atlantic and Pacific Tea Co. v. Kiernan, supra; Chrysler Corp. v. State Property Tax Appeal Board,* 69 Ill. App.3d 207, 387 N.E.2d 351 (1979), and has in fact been completely eliminated as a valid consideration in valuation by at least one jurisdiction. *In re Johnstown Assoc.,* 431 A.2d 932 (Pa. 1981). This is because the results of the method "rarely, if ever would determine

---

data for comparable properties), productivity, and nature of use (actual and potential), the advantage or disadvantage of factors such as location, accessibility, transportation facilities, size, shape, topography, quality of soil, water privileges, availability of water and its cost, easements and appurtenances, zoning, dedication of lands as provided for in section 246-12, and further to the opinions of persons who may be considered to have special knowledge of land values, and all other influences, whether similar to those listed or not, which fairly and reasonably bear upon the question of value.

\* \* \* \* \*

the value at a public sale" insofar as it fails to take into account, among other things:

> the particular property; the character of the work done and materials furnished in the construction of the building; its present condition of repair or disrepair; the wisdom or unwisdom of its location . . .; its modernity and adaptability to [its] purpose; the likelihood of competition with other and better buildings; and whether the property itself and the neighborhood in which it is situated are likely to increase or decrease in value.

*Appeal of Metropolitan Edison Co.*, 161 A. 303, 304 (Pa. 1932).

Nevertheless, under the director's position the ascertainment of fair market value with respect to buildings would be limited to that amount which is yielded by the replacement cost method of valuation, regardless of the degree to which that figure reflects the realities of the marketplace. The director argues that this result was intended by the legislature in order to "further assure that a uniform and equal assessment shall be achieved."

The legislature however appears to have been desirous of accommodating the abovementioned limitations in the replacement cost method by also requiring that in the valuation of buildings "[a]ge, condition and utility or obsolescence shall be considered." In the absence of specificity as to the methods by which these factors are to be taken into account, we conclude that by this language the legislature intended that the director be permitted to consider and potentially utilize any means which most appropriately reflect consideration of these factors. These would include alternative modes of valuing buildings.[4]

---

[4] The director argues that the language of the statute represents an express and unequivocal mandate of the exclusive application of the replacement cost method so that this court must so interpret the law. However, as we have said, "statutory language must be read in the context of the entire statute and construed in a manner consistent with the purposes of the statute." Waikiki Resort Hotel v. City & County of Honolulu, 63 Haw. 222, 245, 624 P.2d 1353, 1369 (1981). In this case, we find that the accommodation of the express legislative concern that the director consider the aforementioned enumerated factors requires that the statute's reference to the use of the replacement cost method be read as directory rather than mandatory. *See*, Perry v. Planning Comm'n, 62 Haw. 666, 677, 619 P.2d 95, 103 (1980) (" 'shall' may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed. . . .")

For to hold otherwise would mean that in determining the fair market value of a structure the director would be required to ignore a contemporaneous arms length sale of the property — "the best evidence of true value." *Conalco Inc. v. Monroe County Bd. of Revision,* 50 Ohio St. 2d 129, 363 N.E.2d 722, 723 (1977). And, as in this case, he would be required to ignore figures produced by the capitalization of income, arguably "an acceptable and, in the absence of market data, a preferred method of valuing rental property for property tax purposes." *G.R.F. Inc. v. Bd. of Assessors of City of Nassau,* 41 N.Y.2d 512, 513, 362 N.E.2d 597, 598 (1977). We cannot believe that the legislature, in the interests of uniformity, could have intended to categorically prohibit the consideration of such indications of a building's condition and utility. We therefore conclude that the director may properly utilize them in determining fair market value as part of his consideration of the enumerated factors found in section 246-10(g).

## C.

We turn next to the question whether the director's failure to consider alternative means of valuation necessarily constitutes the basis for an adjustment of an assessment. In this regard, HRS § 232-3(2) (1976) provides that no assessment shall be lowered on appeal unless there is shown:

> (2) Lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, . . .

\* \* \* \* \*

Taxpayer contends that the director's failure to consider and utilize alternative methods of valuation necessarily constitutes such an "illegality of methods." While we agree that this may be demonstrated to be the case in some circumstances, we do not find this to be so as a matter of law.

In our discussion above we found that pursuant to HRS § 246-10(g) the replacement cost method of valuation has been identified as the primary means of valuation of buildings, but that other methods of valuation may be utilized pursuant to the director's duty to consider a structure's "age, condition, utility or obsolescence."

The legality of the use of the replacement cost method to the exclusion of all others will therefore turn on whether the director's actions constituted a failure to accommodate these delineated factors. Thus, if it can be demonstrated that the enumerated factors are not accurately reflected in the valuation resulting from the principal method's application and that consideration or utilization of the results of other methods would better reflect these factors, then the method applied could indeed be determined to be "illegal" since it failed to accommodate the legislature's requirements. The burden of demonstrating such illegality would of course fall upon the taxpayer and any evidence relevant to such proof would be admissible.

Reversed and remanded for further proceedings in accordance with this opinion.

*C. Michael Hare (Richard L. Griffith* with him on the briefs; *Cades Schutte Fleming & Wright* of counsel) for taxpayer-appellant AMFAC, INC.

*T. Bruce Honda,* Deputy Attorney General, Attorney for Director of Taxation, appellee.