In the Matter of the Tax Appeal of FRANK W. SWANN and EMMY LOU SWANN, Taxpayers-Appellants

NO. 12982

(TAX APPEAL CASE NO. 2424)

FEBRUARY 28, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Frank W. Swann (Swann) and Emmy Lou Swann (collectively Appellants or the taxpayers) appeal from the judgment of the tax appeal court affirming the assessed valuation of Appellants' real property for the 1986-1987 tax year, as determined by the Director of Finance of the County of Maui (Director). Essentially, the taxpayers claim that the method which the County's real property tax appraiser used to determine the assessed valuation of the improvements on their land was illegal and, as a consequence, the County imposed on them "a disproportionate and unequal share of the County tax burden." We affirm the tax appeal court's judgment.

I.

The improvements on the taxpayers' land in Kihei, Maui, consist of a two-story residential building (Building) with 3,920 square feet of living area, a 432 square foot garage, a 392 square foot carport, and a 2,086 square foot deck with 370 lineal feet of railing. Construction of the Building commenced in 1984.

On December 29, 1984, Maui County real property tax appraiser Jerry M. Niemeyer (Niemeyer) inspected the Building, which was 90.5 percent complete at that time. For the 1985-1986

tax year,[1] Niemeyer determined the assessed valuation of the Building to be $135,000. He arrived at such valuation by multiplying the Building Department's estimated building permit value of the Building, $150,000, by the completion percentage of 90.5. At the tax appeal court trial, Niemeyer testified that the Building Department "will use either $45 or $55 as a cost factor" for the permit value. Transcript at 92.

For the 1986-1987 tax year, Niemeyer calculated the assessed valuation to be $403,156 for the Building and $64,978 for the land. Deeming themselves aggrieved by the assessment, the taxpayers appealed to the Maui County board of review (Board). Because the assessed valuation for the Building included the value of an incomplete swimming pool, the Board reduced the Building valuation to $373,933, but sustained the land valuation of $64,978.

The taxpayers then appealed the Board's decision relating solely to the $373,933 assessed valuation of the Building to the tax appeal court. At the trial, Niemeyer testified that he utilized the cost approach in determining the assessed valuation of the Building. He calculated the replacement cost of the Building by using a cost factor manual (Manual) formulated by the Property Technical Office of the City and County of Honolulu. He determined that the Building fell within the "Residential W-6" Manual classification and used a $73.41 per square foot cost factor applicable to a residential W-6 basic U-shaped single-family wood building in the 2,800 square feet category. He used the $73.41 cost factor for the second floor living area and adjusted the cost factor to $51.39 for the first floor living area, $22.02 for the garage, $8.55 for the carport, $5.99 for the deck, and $17.04 for the railing. Since the Manual cost factors were formulated in 1983, a 1.284 adjustment index was applied to the computed total to bring the replacement cost to a 1986 level. A .98 depreciation index was then applied. The replacement cost, as adjusted, less depreciation, resulted in the assessed valuation of $373,933 for the Building.

The taxpayers submitted evidence that the actual cost of construction of the Building totaled $171,546.85. Clarence Seong

---

[1] Maui County Code (MCC) § 3.48.130 (1980 & Supp. 1988) requires the Director of Finance to give notice of the assessment for the tax year on or before the fifteenth day of March preceding the tax year.

(Seong), the taxpayers' appraiser, testified that the fair market value of the Building was $202,400.

The tax appeal court made the following findings of fact (FOFs) which Appellants challenge on appeal:

> 8. For the mass valuation of real property for tax purposes, in determining the replacement cost of buildings, the COUNTY OF MAUI utilizes a cost factor manual formulated by the Property Technical Office of the City and County of Honolulu.
>
> This manual is updated and adjusted each year to reflect market changes and further adjustments for differences in replacement costs for each island.
>
> 9. Utilizing the cost factor manual, the County correctly classified APPELLANTS' residence as a W-6 as it fit most of the criteria set forth for a W-6 classification.
>
> 10. Applying the cost factor manual to appellants' W-6 residence resulted in a proper assessment of $373,933 by the County. Appellants' exclusion of financing, architectural fees and contractor's overhead, etc. is misplaced, since such cost items must be used in determining the replacement cost depreciated of any residence.
>
> 11. The court cannot place any reliance on the expert testimony of Mr. Clarence Seong whose credibility was successfully impeached by the County.

Record at 76-77. Based on its findings, the tax appeal court rendered a judgment in favor of the Director, from which the taxpayers timely appealed.

## II.

When reviewing the decision and findings of the tax appeal court, a "presumption . . . arises favoring its actions . . . and [they] should not be overturned without good and sufficient reason[.]" *In re Ewa Plantation Co.*, 47 Haw. 41, 51, 384 P.2d 287, 292 (1963). Also, the appellant has the burden of showing that the tax appeal court's decision was "clearly erroneous." *In re Puna Sugar Co., Ltd.*, 56 Haw. 621, 623, 547 P.2d 2, 4 (1976). *See also In re Hawaiian Land Co., Ltd.*, 53 Haw. 45, 49, 487 P.2d 1070, 1074 (1971), *appeal dis-*

*missed,* 405 U.S. 907, 92 S. Ct. 938, 30 L. Ed. 2d 778 (1972). We have held that the term "clearly erroneous" has the same meaning in a tax appeal context as that term is construed under Hawaii Rules of Civil Procedure Rule 52(a). *In re O. W. Limited Partnership,* 4 Haw. App. 487, 492-93, 668 P.2d 56, 61 (1983).

We apply these standards in reviewing this appeal.

### III.

The assessment, levy, and collection of real property taxes in Hawaii was the function of the State Department of Taxation and its predecessor agencies for many years. *See* Hawaii Revised Statutes (HRS) Chapter 246 (1985). Effective July 1, 1981, however, pursuant to the mandate of section 3 of article VIII of the State Constitution,[2] the functions, powers, and duties relating to the taxation of real property were transferred to the counties. *See* Act 279, 1980 Haw. Sess. Laws 533 (codified in HRS Chapter 246A (1985)). HRS § 246A-2(1) provides in part as follows:

> [T]he counties shall by majority agreement of the counties, provide for uniform policies and methods of assessment for the taxation of all real property throughout the State. Such policies and methods shall include but not be limited to the assessment, levy, and collection of real property taxes. Upon agreement of the uniform policies and methods to be used for the taxation of all real property each county shall thereafter adopt by ordinance such uniform policy and method of assessment as the real property tax law of the county.

Maui County's ordinance relating to real property taxation is codified in Chapter 3.48 of the Maui County Code (MCC) (1980 & Supp. 1988). MCC § 3.48.290, relating to valuations of taxable real property, provides in part:

---

[2] As amended in 1978, section 3 of article VIII of the State Constitution states:

The taxing power shall be reserved to the State, except so much thereof as may be delegated by the legislature to the political subdivisions, and except that all functions, powers and duties relating to the taxation of real property shall be exercised exclusively by the counties, with the exception of Kalawao. The legislature shall have the power to apportion state revenues among the several political subdivisions.

> The director of finance shall cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the county .... In making such determination and assessment, the director shall separately value and assess, within each class established in accordance with Section 3.48.305,[3] buildings and all other real property, exclusive of buildings. [Footnote added.]

The disposition of this appeal requires our analysis of MCC § 3.48.290.

### A.

Appellants initially contend that the tax appeal court erred in permitting the use of "replacement cost" as a measure of the Building's value in the year it was completed, instead of its "actual cost" of $171,546.85 which was "uncontradicted." We disagree.

MCC § 3.48.290 requires the Director to cause the fair market value of taxable real property to be determined "by the market data and cost approaches to value[.]"

The cost approach to value "takes the valuation of the land by the market approach and adds to it the sound value of the structures — that is, the cost of reconstruction less accrued depreciation." J. Sentemma & J. Murphy, *Fair Market Value in Condemnation and Realty Tax Proceedings*, 6 Real Estate L. J. 46, 52 (1977). The cost approach is also designated as "the reproduction-cost-new-less-depreciation (RCNLD) method." Comment, *The Road to Uniformity in Real Estate Taxation: Valuation and Appeal*, 124 U. Pa. L. Rev. 1418, 1430 (1976). *See also* 7 P. Rohan & M. Reskin, *Nichols on Eminent Domain* § 8A.02 (Rev. 3d ed. 1988).

Niemeyer used the cost approach to value — replacement cost less depreciation — in determining the assessed valuation of the Building. This was in accordance with the provisions of MCC § 3.48.290.

---

[3] MCC § 3.48.305 provides for eight classifications of land: improved residential, unimproved residential, apartment, hotel and resort, commercial, industrial, agricultural, and conservation.

Although the "original cost of construction is a proper factor for consideration in the valuation of improved real property for purposes of taxation," 72 Am. Jur. 2d *State and Local Taxation* § 765 at 88 (1974), such cost is not necessarily equivalent to the replacement cost even if the improvement was recently constructed. The actual cost figures "may reflect a peculiar advantage or disadvantage derived from the time or circumstances of the construction[.]" *Grossman v. Board of Trustees of Village of Geneseo*, 44 A.D.2d 259, 261, 354 N.Y.S.2d 188, 192 (1974). Moreover, an exclusive reliance on "the naked cost of construction" would have a "destructive effect . . . on [the basic] uniformity [requirement of state and local taxation law]." *Bostian v. Franklin State Bank*, 167 N.J. Super. 564, 572, 401 A.2d 549, 553 (1979).

In the case at hand, the evidence indicates that the construction of the Building did not entail the usual transaction involving the use of an architect to design the structure and the general bid selection of a contractor to build it. In the opening brief at page 19, Appellants designate themselves as "Owner-Builders." Swann testified that he met his "general contractor," Frank Stiller, in Los Angeles and purchased all of the materials for the Building at that time; he stated that the materials were shipped directly to Maui from the mainland in a Matson container. Transcript at 102. Although Stiller was paid $2,000 "for design," Appellants paid directly for all material and labor costs, instead of channeling such costs through their "general contractor." Appellants' Exhibit 2. Swann admitted that he "was able to effect some savings in building this house[.]" Transcript at 102.

In our view, the actual construction cost in this case does not reflect the replacement cost for valuation purposes. Accordingly, there was no error in the use of the replacement cost, rather than the actual construction cost, in valuing the Building.

## B.

Appellants next argue that the tax appeal court erred in allowing the use of the Manual that was prepared for the City and County of Honolulu to determine the replacement cost of the Building, which resulted in a valuation increase from $135,000 in 1985 to $373,933 in 1986. We find no error.

The reasons for the dramatic 177 percent increase are disclosed in the record. The 1985 assessed valuation was based on the fact that the Building was only 90.5 percent complete and on the Building Department's estimated building permit value of $150,000. Niemeyer testified that the $135,000 figure was not an accurate reflection of the "fair market value." Transcript at 92. He also stated that assessing the value of an incomplete building by multiplying the Building Department's estimated permit value by the completion percentage was "a standard operating procedure due to lack of manpower in our office." *Id.*

HRS § 246A-2(1), *supra,* requires the counties to provide for "uniform policies and methods of assessment for the taxation of all real property throughout the State." Niemeyer testified that the Manual "was formulated by the Property Technical Office, City and County of Honolulu ... [and] is used by every county." Transcript at 74. One may reasonably conclude that the use of the Manual by the respective counties, with proper adjustments, constitutes a uniform method of valuing buildings for property tax assessment purposes.

Niemeyer testified that adjustments in the Manual's cost factors are made annually, based on studies made by the Property Technical Office. Also, different cost factors are used by the different counties "because of the shipping costs involved[.]" *Id.* at 88. Thus, in utilizing the Manual cost factors, with such adjustments, Niemeyer adhered to the uniformity requirement of HRS § 246A-2(1).

We hold that the use of the Manual, with proper adjustments, to determine the replacement cost of the Building for the 1986-1987 tax year was neither illegal nor erroneous.

C.

Appellants nonetheless assert that the Director violated MCC § 3.48.290 by failing to utilize both the market data and cost approaches in determining the assessed valuation of the Building. We disagree.

We note that MCC § 3.48.290 requires the Director to value and assess buildings and land separately and to use "appropriate sys-

tematic methods suitable for mass valuation of properties for taxation purposes" in doing so.

In our view, the method of valuation utilized by the Director met the requirements of MCC § 3.48.290. As previously discussed, the cost approach entails valuing the land by the market data approach and adding to that value the replacement cost of the building, less accrued depreciation. Since there was no dispute regarding the assessed valuation of the land in this case, no evidence was adduced at trial as to how Appellants' land was valued. However, during oral argument, the Director's counsel explained that the market data approach is used to value land. Thus, the valuation of Appellants' real property — land and Building — involved both the market data and cost approaches in accordance with MCC § 3.48.290.

Appellants argue, however, that the Director "offered no evidence of sales of comparable properties," and, citing *In re Amfac, Inc.,* 65 Haw. 499, 654 P.2d 363 (1982), claim that the sole use of the replacement cost approach to value the Building was reversible error. *Amfac* is not a case in point. *Amfac* involved the statutory construction of HRS § 246-10(g), which applied to the State Director of Taxation before real property tax functions were transferred to the counties.

Moreover, the market data or comparable sales approach is not conducive to the "mass valuation" of improved real property on an annual basis as mandated by MCC § 3.48.290. Under the market data or comparable sales approach, "recently sold properties similar to the subject property are used to indicate the subject property's market value." 7 P. Rohan & M. Reskin, *Nichols on Eminent Domain* § 8A.02 (Rev. 3 ed. 1988). This approach may be applied to vacant land or improved parcels. Where improved parcels are compared under the approach, "comparability must be analyzed on the basis of such items as highest and best use, zoning, yield, density, size, time, topography, configuration, road pattern, parking, transportation facilities, amenities, and, in short, all relevant facts that a purchaser or seller would consider, . . . as applying to both the land and improvements." J. Sentemma & J. Murphy, *Fair Market Value in Condemnation and Realty Tax Proceedings,* 6 Real Estate L. J. 46, 52 (1977). We are aware of the time restrictions under which the Director's staff operates, as well as the magnitude of the

effort that would be required (1) to determine annually the fair market value of each improved parcel in the County by the market data or comparable sales approach, and (2) to apportion such value to the building and the underlying land, respectively. Thus, there is no error in the Director's conclusion that the market data approach is not an "appropriate systematic method[ ] suitable for [the] mass valuation" of buildings on improved land.

## D.

We recognize the fact that no method of "mass valuation of properties for taxation" assures "absolute accuracy and uniformity[.]" *Title & Trust Co. v. Board of Equalization, Ada County,* 94 Idaho 270, 277, 486 P.2d 281, 288 (1971). We are also aware of the caveat in *Amfac* that "the replacement cost method has been viewed by some to be the least favored means of valuation[.]" 65 Haw. at 502, 654 P.2d at 366 (citing *Great Atl. & Pac. Tea Co. v. Kiernan,* 42 N.Y.2d 236, 397 N.Y.S.2d 718, 366 N.E.2d 808 (1977)). *See also Chrysler Corp. v. State Property Tax Appeal Bd.,* 69 Ill. App. 3d 207, 25 Ill. Dec. 695, 387 N.E.2d 351 (1979). Nevertheless, any taxpayer "aggrieved by an assessment" may appeal the assessment to the board of review or the tax appeal court. MCC § 3.48.595.

The taxpayers in this case exercised their right of appeal and presented to the tax appeal court the expert testimony of their appraiser Seong, who had arrived at a value of $202,400 for the Building by utilizing the market data approach. However, the tax appeal court placed no reliance on Seong's testimony and held that Appellants had not met their burden of proving that they were entitled to a reduction in the assessed valuation of the Building.

On appeal to this court, Appellants challenge the tax appeal court's FOFs 8, 9, 10, and 11. Based on our review of the record, we hold that those findings are supported by substantial evidence and are not clearly erroneous because we do not have a definite and firm conviction that a mistake has been made. *Gadd v. Kelley,* 66 Haw. 431, 442, 667 P.2d 251, 259 (1983); *Shoemaker v. Takai,* 57 Haw. 599, 601, 561 P.2d 1286, 1288 (1977); *Maui Ranch Estates Owners Ass'n v. County of Maui,* 6 Haw. App. 414, 418-19, 724 P.2d 118, 122 (1986). Consequently, the tax appeal court's conclusions of law based on the challenged findings are also correct.

Appellants claim that the tax appeal court erred in disregarding Seong's expert testimony. However, as we have stated before, "we are bound by the trial court's determination of credibility." *Doe IV v. Roe IV,* 5 Haw. App. 558, 568, 705 P.2d 535, 544 (1985) (citations omitted).

Therefore, Appellants have failed to meet their burden of showing that the tax appeal court's decision was clearly erroneous.

## IV.

Finally, Appellants contend that the Director has required them to "bear a disproportionate and unequal share of the County tax burden" in violation of their equal protection rights under the United States Constitution[4] and the State Constitution.[5] This contention is without merit.

In asserting this constitutional claim, Appellants cite *Hillsborough v. Cromwell,* 326 U.S. 620, 66 S. Ct. 445, 90 L. Ed. 358 (1946), for the principle that "[t]he equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Id.* at 623, 66 S. Ct. at 448, 90 L. Ed. at 363. In support of their contention, Appellants refer to the residential building of Brian Wood (Wood) located immediately across the street from their Building. They claim that although Wood's building was built in the same year as their Building and is comparable to it, Wood's building was given a W-3 classification and appraised at $49.02 per square foot.

At the trial, Niemeyer testified that he mistakenly classified Wood's building "as a W-3 plus" and that the classification later was raised to "[a] 4-plus." Transcript at 94. He further testified that Wood's building is not comparable to Appellants' Building, stating that Wood's building "is a smaller home, it is only 1,396 square feet,

---

[4] The Fourteenth Amendment to the United States Constitution provides in part:

No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.

[5] Art. 1, sec. 5 of the State Constitution provides in part:

No person shall . . . be denied the equal protection of the laws[.]

and there is no redwood interior siding[.]" *Id.* at 95. Niemeyer cited additional structural and other differences between the two buildings to justify his classification of Wood's building as a W-4 plus and Appellants' Building as a W-6.

"The Equal Protection Clause 'applies only to taxation which in fact bears unequally on persons or property of the same class.'" *Allegheny Pittsburg Coal Co. v. County Comm'n of Webster County, W. V.,* 488 U.S. ___, ___, 109 S. Ct. 633, 637, 102 L. Ed. 2d 688, 697 (1989) (citing *Charleston Fed. Sav. & Loan Ass'n v. Alderston,* 324 U.S. 182, 190, 65 S. Ct. 624, 629, 89 L. Ed. 2d 857, 863 (1945)). As indicated above, Wood's building and Appellants' Building were not deemed to be comparable and were assigned different classifications pursuant to the Manual. Since Wood's building and Appellants' Building are not of the "same class," the Equal Protection Clause is not applicable.

Accordingly, we hold that there was no violation of Appellants' equal protection rights.

## V.

The tax appeal court committed no error, and its judgment is affirmed.

*Frank W. Swann* and *Emmy Lou Swann,* taxpayers-appellants, *pro se.*

*Howard N. Fukushima,* Deputy Corporation Counsel, for appellee Director of Finance, County of Maui.